**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v.   : | CRIMINAL NUMBER 17-378 |
| : | |
| RUBEN ALVARADO-DIAZ : | |

**DEFENDANT'S SENTENCING MEMORANDUM**

Ruben Alvarado-Diaz files this memorandum in aid of mitigation at sentencing. The Presentence Investigation Report prepared by United States Probation Officer Tricia Donnelly concludes the advisory range is 2-8 months based on a total offense level 6, Criminal History Category III. Given the particular facts and circumstances of this case, the defense suggests that a sentence of five months bests fulfill the sentencing goals pursuant to *United States v. Booker*, 543 U.S. 220 (2005) and the subsequent cases reaffirming its holding, and 18 U.S.C. §3553(a).

**I.   PROCEDURAL HISTORY**

On July 20, 2017, the United States Attorney's Office for the Eastern District of Pennsylvania filed an indictment charging Mr. Alvarado-Diaz with one count of Illegal Reentry in violation of 8 U.S.C. § 1326(a). Mr. Alvarado-Diaz entered a guilty plea to the indictment on October 18, 2017. Sentencing is scheduled for December 6, 2017.

**II.   MR. ALVARADO-DIAZ'S PERSONAL HISTORY**

Mr. Alvarado-Diaz had a life which is similar to most people who stand before this Court awaiting sentencing for this offense. He grew up in a very poor family which struggled to make ends meet to feed all of its members. Together with his father, he came to this country while a juvenile in search of a better life. He enrolled in school but dropped out shortly after enrolling

and began working in landscaping. He worked to help support his family in Mexico, together with himself and, ultimately, his own family which included his children. In fact, his motivation for reentering was his wife and children for whom he was providing financial support. As he remains in custody, he is faced with the added stress of hearing how his incarceration is affecting his family's standard of living, both in Mexico and the United States. Mr. Alvarado-Diaz realizes that he cannot return to this country without risking rearrest and additional, more severe, criminal penalties.

This experience has impacted him deeply and has served the deterrent effect given the extreme hardships suffered by his family during his incarceration. Additionally, he knows that the current political climate and applicable sentencing guidelines supports the implementation of harsher penalties for aliens with histories of prior convictions and deportations, which has now increased as a result of this prosecution. This further reinforces the need for him to refrain from reentering the United States.

### III.   APPLICATION OF THE STATUTORY FACTORS TO THIS CASE

The Court must consider all of the factors identified in 18 U.S.C. §3553(a) and impose a sentence that is "sufficient, but not greater than necessary" to satisfy the purposes of sentencing. 18 U.S.C. §3553(a)(1).

    **A.   The Nature and Circumstances of the Offense and History and Characteristics of Mr. Alvarado-Diaz**

Mr. Alvarado-Diaz's work history and his motive for the commission of the instant offense, all weigh in favor of a sentence of five months.

**B.     The Need for the Sentence Imposed to Promote Certain Statutory Objectives**

*1.     To reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense.*

Mr. Alvarado-Diaz's period of incarceration is especially difficult given his inability to help his family.  He was providing them with much needed income, as well as love and support.  The guidelines generally account for harm, but not at all for the motive for committing the offense, which is highly relevant.  Mr. Alvarado-Diaz understands that he should not have returned to the United States and is acutely aware of the potential for additional punishment in this and future cases.  A sentence at the bottom of the guideline range would not promote a lack of respect for the law as Mr. Alvarado-Diaz is presently incarcerated and will remain in custody at a minimum until deportation.  As the Court is aware, deportations are not immediate and Mr. Alvarado-Diaz is likely to be incarcerated beyond whatever sentence this Court imposes.

*2.     To afford adequate deterrence to criminal conduct.*

A sentence above five months is neither warranted nor necessary to further deter Mr. Alvarado-Diaz from returning.  He understands what he would likely face if he returns in the future, which is unfathomable to him given his present guideline range.  Mr. Alvarado-Diaz has been incarcerated since June 2, 2017.  Mr. Alvarado-Diaz is very much aware of the significant period of incarceration he faces both and now and in the future should he to return again.  Moreover, the fact that Mr. Alvarado-Diaz was prosecuted for this offense, in lieu of immediate deportation, should serve as sufficient deterrence.

*3.     To protect the public from further crimes of the defendant.*

Mr. Alvarado-Diaz poses no threat to the public.  He will be returned to immigration custody for deportation upon completion of his sentence.  Protection of the public is of

diminished concern in this case.

### C. Kinds of Sentences Available

The range of sentences statutorily available to the Court, including the advisory guidelines range, are listed in Part D of the PSR. This range includes a sentence of incarceration of up to two years, not more than one year of supervised release, a fine of up to $250,000. Section 5D1.1(c) discourages the Court from imposing a period of supervised release. It reads as follows: The court ordinarily should not impose a term of supervised release in a case in which supervised release is not required by statute and the defendant is a deportable alien who likely will be deported after imprisonment. Moreover, the Third Circuit recently recognized the presumption against imposing supervised release in cases where the defendant is a deportable immigrant. See United States v. Azcona-Polanco, __ F.3d __, 2017 WL 3184723, *1 (3d Cir. July 27, 2017).

Although Mr. Alvarado-Diaz does have a prior conviction for Illegal Entry, the sentence he received for that offense is nothing compared to what he is presently facing. Border prosecutions offer little if any deterrence because of the way that prosecutions for illegal entry offenses are handled. The Court should recognize that the current prosecution differs greatly from his prior contacts at the border. For one, Mr. Alvarado-Diaz face a felony offense in this prosecution and as a result of the plea in this case will forever be saddled with the felony criminal record. Secondly, at just over five months, Mr. Alvarado-Diaz has already been in custody longer than his prior contacts with ICE agents along the border.

As such, the defense is merely requesting that the Court sentence Mr. Alvarado-Diaz to a term of five months, which represents a sentence in the middle of the advisory guideline range and more than double what he previously served in connection with his prior border arrest.

Considering that his deportation will not be immediate and that he will remain in custody beyond any sentence imposed by this Court pending deportation, the defense's request is not unreasonable.

### IV.     CONCLUSION

Based on the above reasons, the defense respectfully requests the Court impose a sentence of five months.

Respectfully submitted,

 s/Maria A. Pedraza
MARIA A. PEDRAZA
Assistant Federal Defender

## CERTIFICATE OF SERVICE

      I, Maria A. Pedraza, Assistant Federal Defender, Federal Community Defender Office for the Eastern District of Pennsylvania, hereby certify that I have electronically filed and served a copy of the Defendant's Sentencing Memorandum by electronic notification and/or electronic mail, upon Laurie Magid, Assistant United States Attorney.

                    /s/ Maria A. Pedraza
                    MARIA A. PEDRAZA
                    Assistant Federal Defender

DATE:      November 28, 2017